UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DEREK A. JONES,**<br><br>    **Plaintiff,**<br><br>          v.<br><br>**DISTRICT OF COLUMBIA WATER<br>AND SEWER AUTHORITY,**<br><br>    **Defendant.** | Civil Action No.  12-1454 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Derek A. Jones, who is black, was employed as a recruiter by Defendant District of Columbia Water and Sewer Authority.  His lawsuit alleges that WASA unlawfully terminated him in violation of federal Civil Rights Acts and D.C. law.  The sole federal claim is based on WASA's alleged retaliation against him for voicing concerns during staff meetings about racially discriminatory employment practices.  In now moving to dismiss, Defendant correctly argues that Jones has failed to sufficiently allege causation under either Title VII or Section 1981.  The Court will thus grant Defendant's Motion as to this count and permit Plaintiff to pursue his state claims in the appropriate local court; alternatively, he may file an amended complaint in this Court if facts exist to support a causal link between his protected activity and his termination.

**I.**      **Background**

According to Plaintiff's Complaint, which the Court must presume true for purposes of this Motion, Jones worked as a recruiter in WASA's Department of Human Resources from 2001 until his termination on October 13, 2011.  See Compl., ¶¶ 6, 23.  While employed at WASA, Plaintiff believed that the agency was conducting personnel transactions in violation of

1

District and WASA regulations. Id., ¶ 13. Plaintiff also discovered that his supervisor was hiring individuals who were ineligible or had submitted falsified employment applications. Id., ¶¶ 14-15. Additionally, Jones learned that "a good friend of WASA's chief operating officer" was being hired and "paid an illegal salary." Id., ¶¶ 15-16. Finally, Plaintiff noticed that a black employee, Charles Taylor, had been unfairly passed over for promotion, and he called this to his supervisor's attention. Id., ¶ 17.

Plaintiff expressed his concerns about illegal and prohibited personnel practices to his supervisor and WASA's Director of Human Resources at "a number of all-hands meetings of the WASA Human Resources Department in 2010 and 2011." Id., ¶ 18. These practices, in Plaintiff's words, included:

   a. Failing to adhere to WASA's written personnel policies and procedures;
   b. Hiring persons who were less qualified while screening out persons who were more qualified;
   c. Hiring persons purely because they were friends of management persons;
   d. Failing to use accurate testing procedures when the effect was to fail to provide qualified minority applicants with a full and fair opportunity to be considered for positions and promotions.
   e. Using private personnel agencies to recruit personnel, when the effect of using such personnel agencies was to adversely impact the hiring and promotional opportunities of minority employees.
   f. Failing to properly vet the credentials of engineering candidates, which could cause not only a violation of WASA's federal grant agreements, but could possibly jeopardize the health and safety of the local population.

Id.

Plaintiff's supervisor, moreover, allegedly asked him on several occasions to perform tasks that were illegal or in violation of D.C. and WASA regulations. Id. (Complaint contains two paragraphs numbered as 18). Plaintiff was written up twice for insubordination when he refused to perform these tasks. Id., ¶ 19. In August 2011, WASA created the new position of Senior Recruiter, "for which Mr. Jones was clearly the most qualified person in the Human

Resources Department at WASA." Id., ¶ 21. He was nonetheless informed on October 11 that the position "was going to be filled at a later date." Id., ¶ 22. On October 13, two days later, WASA notified Plaintiff that he was being terminated for insubordination and failing to follow his supervisor's directives. Id., ¶ 23.

Plaintiff received a right-to-sue letter from the Equal Employment Opportunity Commission and satisfied all administrative prerequisites to filing his suit. Id., ¶ 26. He brought this action against WASA on September 3, 2012. In one count, Plaintiff alleges that WASA unlawfully terminated his employment in retaliation for his concerns about racially discriminatory practices, in violation of both the Civil Rights Acts of 1866 and 1964, 42 U.S.C §§ 1981 and 2000e, *et seq.*, and the District of Columbia Human Rights Act, D.C. Code § 1-2501 *et seq.* Id., ¶¶ 31-32. In a second count, Plaintiff alleges that his termination violated his common-law right to be free from wrongful discharge. Id., ¶¶ 28-29. Although Plaintiff lists only two causes of action, for the purposes of this Motion, the Court will assume he is asserting three separate claims: wrongful termination, violation of the DCHRA, and violation of federal anti-discrimination statutes.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The notice-pleading rules are "not

meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he must thus be given every favorable inference that may be drawn from the allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)). Although a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**III.    Analysis**

Although Plaintiff arguably asserts three causes of action here, the Court need only deal with the one count that alleges federal discrimination claims. Having dismissed that count, it will decline to exercise supplemental jurisdiction over the remaining D.C. and common-law claims.

A. Retaliation

Count II of the Complaint asserts that Defendant violated Title VII and Section 1981 when it terminated Jones in retaliation for voicing his concerns to his supervisor about WASA's

racially discriminatory employment practices. In moving to dismiss, WASA argues both that Plaintiff's belief that he was opposing an unlawful employment practice was not objectively reasonable and that Plaintiff fails to establish a causal relationship between the alleged protected activity and his termination. Agreeing with WASA on the latter point, the Court need not address the former.

Title VII makes it illegal for an employer to discriminate against an employee because the employee "opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge . . . or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Under Section 1981, an employer may not discriminate on the basis of race in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). In CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008), the Supreme Court held that Section 1981 also covers "retaliation against a person who has complained about a violation of another person's contract-related 'right.'" Id. at 445; see also Welzel v. Bernstein, 436 F. Supp. 2d 110, 118 (D.D.C. 2006) ("[C]ourts agree that an act of retaliation for engaging in activity protected by Title VII 'does not give rise to a claim for retaliation that is cognizable under § 1981 unless that activity was also protected by § 1981.'") (citation omitted).

To bring a claim for retaliation under Title VII or Section 1981, Plaintiff must allege that he engaged in a statutorily protected activity, that his employer took an adverse personnel action against him, and that a causal connection exists between the two. Carney v. Am. Univ., 151 F.3d 1090, 1095 (D.C. Cir. 1998). At the motion-to-dismiss stage, a court cannot dismiss a complaint simply for failing to plead the elements of a *prima facie* case. Swierkiewicz v. Sorema N.A., 534

U.S. 506, 510-11 (2002); see also Twombly, 550 U.S. at 586 ("[I]t should go without saying in the wake of Swierkiewicz that a heightened production burden at the summary judgment stage does not translate into a heightened pleading burden at the complaint stage."). In this case, however, Plaintiff has pled all the elements and has alleged facts to support such a claim. The Court, therefore, is entitled to consider those facts in determining whether Plaintiff could plausibly prevail here. See Twombly, 550 U.S. at 570 (holding that a plaintiff is required to plead "enough facts to state a claim to relief that is plausible on its face").

The Court will assume that Plaintiff engaged in statutorily protected activity and suffered an adverse personnel action. Statutorily protected activities include "opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment." Coleman v. Potomac Elec. Power Co., 422 F. Supp. 2d 209, 212 (D.D.C. 2006) (citation omitted). "[T]he plaintiff must be opposing an employment practice made unlawful by the statute under which [he] has filed [his] claim of retaliation." Lemmons v. Georgetown Univ. Hosp., 431 F. Supp. 2d 76, 92 (D.D.C. 2006) (explaining that if a plaintiff alleges retaliation under 42 U.S.C. § 1981, she must demonstrate that she had alleged harassment or discrimination based on her race, or some other category the law protects, before the retaliatory conduct).

Here, Plaintiff alleges that he voiced his concerns about racially discriminatory practices to his supervisor and the Human Resources Director. Specifically, Plaintiff raised concerns about WASA's "[f]ailing to use accurate testing procedures when the effect was to fail to provide qualified minority applicants with a full and fair opportunity to be considered for positions and promotions" and "[u]sing private personnel agencies to recruit personnel, when the effect of using such personnel agencies was to adversely impact the hiring and promotional opportunities of minority employees." Compl., ¶ 18. Further, Plaintiff spoke to his supervisor

6

about a black employee, Charles Taylor, who was passed over for promotion despite being the most qualified candidate. Id., ¶ 17. The Court will assume, without deciding, that this is sufficient to satisfy the first prong of retaliation.

The second prong is considerably easier since termination is a materially adverse employment action. See Wheeler v. Georgetown Univ. Hosp., 788 F. Supp. 2d 1, 5 (D.D.C. 2011). Here, Plaintiff alleges that on October 13, 2011, WASA notified him that "he was not being terminated as a result of a reduction-in-force, but instead he was being terminated because he was insubordinate, and did not follow the directives of his supervisor, Denyse Jeter-Williams." Compl., ¶ 23. These allegations thus satisfy the second prong.

Where the rubber meets the road here is on the issue of causation. To establish a causal connection between the protected activity and the termination – in the absence of direct evidence – a plaintiff may show "that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985). In other words, mere temporal proximity may establish causation. In determining what constitutes such proximity, the Supreme Court has stated: "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (quoting O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001)) (emphasis added); see also Singletary v. District of Columbia, 351 F.3d 519, 525 (D.C. Cir. 2003) ("[T]his circuit has held that a close temporal relationship may alone establish the required causal connection.").

Although "neither the Supreme Court nor the [D.C. Circuit] has established a bright-line three-month rule," Hamilton v. Geithner, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012), this Circuit has generally found that a two- or three-month gap between the protected activity and the adverse employment action does not establish the temporal proximity needed to prove causation. See Taylor v. Solis, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (rejecting interval of two and a half months as establishing temporal proximity and citing, with approval, cases that did not find temporal proximity when two to three months elapsed between protected activity and adverse employment action); see also Tressler v. Amtrak, No. 09-2027, 2012 U.S. Dist. LEXIS 170304, at *35 (D.D.C. Nov. 30, 2012) (explaining that five- or ten-month gap was too lengthy to establish necessary temporal proximity).

Here, WASA knew of Plaintiff's complaints about racially discriminatory practices because he voiced these concerns at department meetings "in 2010 and 2011" and "[i]n about late 2009." Compl., ¶¶ 12, 17-18. The Court, however, has no idea when in 2011 Plaintiff's protected activities took place. As these comments may have been voiced many months before his October 2011 termination – and as no additional facts allege a causal link – Plaintiff's Complaint does not establish an inference of causation. See Clark Cnty. Sch. Dist., 532 U.S. at 273-74. Given the uncertainty of the timing, dismissal with prejudice would be unwarranted. The Court will permit Plaintiff, if he can plead facts that plausibly establish causation, to file an amended complaint. Alternatively, he may decide simply to proceed in a local court on his state claims. He will have three weeks to decide, as the accompanying Order instructs.

### B. Supplemental Jurisdiction

If Plaintiff cannot sufficiently establish causation, then this Court lacks subject-matter jurisdiction over his remaining wrongful-termination and DCHRA claims, and it will decline to

exercise supplemental jurisdiction. Federal district courts are given supplemental (or "pendent") jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction. 28 U.S.C. § 1367(a). By the same token, they "may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). The decision of whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion as "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966), quoted in Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005). When deciding whether to exercise supplemental jurisdiction over state claims, federal courts should consider "judicial economy, convenience, fairness, and comity." Shekoyan, 409 F.3d at 424. When all federal claims are eliminated before trial, however, "the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1267 (D.C. Cir. 1995) (finding the discretion set out in Carnegie-Mellon Univ. "unaffected by the subsequent enactment of 28 U.S.C. § 1367(d), in the Judicial Improvements Act of 1990").

Here, the factors weigh against retention of the case. This Court is dismissing the only federal claim against Defendant. This case has not progressed in federal court past Defendant's Motion to Dismiss, and the Court has developed no familiarity with the issues presented. Cf. Schuler v. PricewaterhouseCoopers, LLP, 595 F.3d 370, 378 (D.C. Cir. 2010) (finding that district court appropriately retained pendent jurisdiction over state claims where it had "invested

time and resources" in the case). The Court can thus conceive of no undue inconvenience or unfairness to the litigants that would result from such a decision. Finally, Plaintiff will not be prejudiced because 28 U.S.C. § 1367(d) provides for a tolling of the statute of limitations during the period the case was here and for at least 30 days thereafter. See Shekoyan, 409 F.3d at 419 (affirming district court finding that because of this tolling, dismissal of pendent state claims "will not adversely impact plaintiff's ability to pursue his District of Columbia claims in the local court system") (citation omitted). The Court, therefore, will dismiss the wrongful-termination and DCHRA claims without prejudice, and Plaintiff may bring such claims, if not barred, in the appropriate local court.

## IV.    Conclusion

For the reasons articulated herein, the Court will issue a contemporaneous order granting Defendant's Motion and permitting Plaintiff the option of filing an amended complaint or proceeding in a non-federal court.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: February 13, 2013