**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DEREK A. JONES,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 12-1454 (JEB)** |
| **DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

On February 13, 2013, this Court dismissed without prejudice Plaintiff Derek A. Jones's

suit alleging that his employer, Defendant District of Columbia Water and Sewer Authority,

unlawfully terminated him in violation of federal and D.C. law.  Finding that Plaintiff had failed

to sufficiently allege causation under either Title VII or Section 1981, the Court granted

Defendant's Motion to Dismiss, but permitted Jones to amend his complaint if facts existed to

support his federal claims.  Now that Jones has augmented his pleadings to address this issue,

WASA again moves to dismiss, this time challenging instead the common-law wrongful-

termination cause of action.  Because the Amended Complaint as pled does not support the

public-policy exception to the at-will doctrine, the Court will grant Defendant's Motion as to this

count, but will again permit Plaintiff an opportunity to remedy this latest deficiency.

## I.      Background

The procedural background of this case is largely set forth in Jones v. Dist. of Columbia

Water and Sewer Auth., No. 12-1454, 2013 WL 518653 (D.D.C. Feb. 13, 2013) (Jones I), in

which the Court previously granted WASA's Motion to Dismiss without prejudice and permitted

1

Plaintiff to file an Amended Complaint.  He did so on March 7, 2013.  <u>See</u> Amended Complaint (ECF No. 21).  The Amended Complaint addresses the causation issues raised in the Court's prior decision by incorporating additional allegations that support a causal link between his protected activity and his termination.  <u>See</u> <u>id.</u>; <u>Jones I</u>, 2013 WL 518653, at *5.

In his Amended Complaint, Plaintiff continues to advance two causes of action: a common-law wrongful-termination claim (Count I), and combined claims that he was unlawfully terminated in retaliation for his concerns about racially discriminatory practices, in violation of both the Civil Rights Acts of 1866 and 1964, 42 U.S.C §§ 1981 and 2000e, *et seq.*, and the District of Columbia Human Rights Act, D.C. Code § 1-2501 *et seq.* (Count II).  <u>See</u> Am. Compl., ¶¶ 40-47.

WASA has renewed its Motion to Dismiss, yet confined only to the wrongful-termination claim.

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted."  When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in the plaintiff's favor.  <u>Leatherman v. Tarrant Cnty. Narcotics & Coordination Unit</u>, 507 U.S. 163, 164 (1993).  Although the notice-pleading rules are "not meant to impose a great burden on a plaintiff," <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted).  Plaintiff

must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)).  Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

### III.     Analysis

In moving to dismiss the wrongful-termination cause of action, WASA contends that Jones's firing does not fit within the "narrow public policy exception to the well-established employment-at-will doctrine."  Mot. at 2-3.  Because the Court agrees that the allegations in Plaintiff's Amended Complaint do not suffice to invoke this exception, it will grant Defendant's Motion, but permit Plaintiff an opportunity to amend his pleadings if he can provide sufficient facts to support this exception.  The Court will first discuss the scope of the public-policy exception, then apply it to the facts alleged in the Amended Complaint.

####     A.     Public-Policy Exception

In considering Plaintiff's claim for wrongful termination, the Court starts with the general proposition that "in the District of Columbia . . . an employer may discharge an at-will employee at any time and for any reason, or for no reason at all."  Adams v. George W. Cochran & Co., Inc., 597 A.2d 28, 30 (D.C. 1991) (citations omitted).  In Adams, the D.C. Court of Appeals recognized a "very narrow exception to the at-will doctrine under which a discharged at-will

employee may sue his or her former employer for wrongful discharge when the sole reason for

the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal

regulation." Id. at 34.  Six years later, the DCCA expanded this exception in its *en banc* decision

in Carl v. Children's Hosp., 702 A.2d 159, 160 (D.C. 1997).

The plaintiff in Carl was a nurse who was terminated after she had testified in the City

Council against her hospital's interests and also as an expert witness for plaintiffs in malpractice

cases.  Id. at 160.  The Court held that the "'very narrow exception' created in Adams should not

be read in a manner that makes it impossible to recognize any additional public policy exceptions

to the at-will doctrine that may warrant recognition."  Id.  A majority of the DCCA – as

constituted by those joining Judge Terry's concurrence and Judge Steadman's dissent – held that

"the recognition of any such [future public-policy] exception must be firmly anchored either in

the Constitution or in a statute or regulation which clearly reflects the particular 'public policy'

being relied upon."  Id. at 162 (Terry, J., concurring).  Additionally, the majority cautioned that

"[t]his court should consider seriously only those arguments that reflect a clear mandate of public

policy – *i.e.,* those that make a clear showing, based on some identifiable policy that has been

'officially declared' in a statute or municipal regulation, or in the Constitution, that a new

exception is needed.  Furthermore, there must be a close fit between the policy thus declared and

the conduct at issue in the allegedly wrongful termination."  Id. at 164 (Terry, J., concurring)

(footnotes omitted).

The contours of this exception have continued to evolve post-Carl, as a court in this

District recently noted:

> After Carl, this Court, the D.C. Court of Appeals, and the D.C.
> Circuit have created additional exceptions to the supposedly "very
> narrow" public policy exception.  See Myers v. Alutiiq Int'l
> Solutions, LLC, 811 F. Supp. 2d 261, 266 (D.D.C. 2011) (Jackson,

J.) ("reporting wrongdoing in connection with government
contracting falls within the public policy exception to an at-will
employment relationship"); <u>Ware v. Nicklin Assocs., Inc.</u>, 580 F.
Supp. 2d 158, 165-66 (2008) (Walton, J.); <u>Riggs v. Home Builders
Inst.</u>, 203 F. Supp. 2d 1, 21 (D.D.C. 2002) (Hogan, J.) ("the policy
of protecting against abuse of the public treasury by utilizing its
funds for partisan activity is a sufficiently clear mandate of public
policy for the purposes of <u>Carl</u>"); <u>Washington v. Guest Servs., Inc.</u>,
718 A.2d 1071, 1080-81 (D.C. 1998) ("[c]onduct that imperils the
health and safety of the elderly residents of a retirement home,
who, as a group, are particularly vulnerable to the kind of practice
here alleged, is obviously contrary to the public policy of this
jurisdiction."); <u>Liberatore v. Melville Corp.</u>, 168 F.3d 1326, 1331
(D.C. Cir. 1999) ("threat to report conditions to the FDA that were
in violation of federal and District of Columbia laws protecting the
public from the purchase of adulterated drugs implicates the kind
of public policy embodied in a statute or regulation underlying the
D.C. Court of Appeals' decision in <u>Carl</u> ").

<u>Coleman v. Dist. of Columbia</u>, 828 F. Supp. 2d 87, 96 (D.D.C. 2011).

While recognizing the recent expansion of the exception, the court in <u>Coleman</u> was

careful to note: In "[a]pplying the principles from <u>Carl</u> and its progeny, this Court must analyze

whether [the plaintiff] has sufficiently plead [*sic*] a violation of a public policy 'firmly anchored

either in the Constitution or in a statute or regulation which clearly reflects the particular policy

being relied upon.'" <u>Id.</u> (quoting <u>Carl</u>, 702 A.2d at 162).  The court ultimately found that the

three sources of public policy that the plaintiff had identified – D.C. Personnel Regulations, the

First Amendment, and a section of the D.C. Code regarding intimidation of witnesses in D.C.

City Council proceedings – failed to provide a "clear mandate of public policy" to support the

wrongful-termination claim there.  <u>Id.</u>

Not only must a plaintiff plead a "clear mandate of public policy," but this public policy

must be one that is not already protected by another statute.  <u>See</u> <u>LeFande v. Dist. of Columbia</u>,

864 F. Supp. 2d 44, 50 (D.D.C. 2012) ("Even where there is a showing of a clearly identifiable

policy, the D.C. Court of Appeals has refused to find new exceptions to the doctrine of at-will

employment where the legislature has already 'creat[ed] a specific, statutory cause of action to enforce' the public policy at issue.") (quoting Carter v. Dist. of Columbia, 980 A.2d 1217, 1225-26 (D.C. 2009)); see also Kassem v. Washington Hosp. Center, 513 F.3d 251, 254 (D.C. Cir. 2008) ("[T]he D.C. Court of Appeals held the exception unavailable 'where the very statute creating the relied-upon public policy already contains a specific and significant remedy for the party aggrieved by its violation'") (quoting Nolting v. Nat'l Capital Grp., Inc., 621 A.2d 1387, 1390 (D.C. 1993)).

In LeFande, a court in this District refused to recognize a new exception to the at-will employment doctrine where the public policy implicated First Amendment rights that were already protected under 42 U.S.C. § 1983: "[T]his is not a case where we have any need to create a new exception to the at-will employment doctrine in order to vindicate an important public policy." 864 F. Supp. 2d at 50-51 (citation and quotation marks omitted); see also Hoskins v. Howard Univ., No. 11- 1779, 2012 WL 928310, at *10 (D.D.C. Mar. 20, 2012) (refusing to apply exception when the statute relied upon to prove public policy contains remedy for its violation); Stevens v. Sodexo, Inc., 846 F. Supp. 2d 119, 126 (D.D.C. 2012) (requiring that "policy must arise from a statute or regulation that does not provide its own remedy" to warrant exception) (citing Carson v. Sim, 778 F. Supp. 2d 85, 97 (D.D.C. 2011)); Hicks v. Assoc. of Am. Med. Colls., 503 F. Supp. 2d 48, 55 (D.D.C. 2007) (remedies under Fair Labor Standards Act and D.C. Minimum Wage Act preclude application of wrongful discharge in violation of public policy); Carter, 980 A.2d at 1225-26 (rejecting public-policy exception where District's Whistleblower Protection Act already provides an employee with cause of action).

Bearing this standard in mind, the Court may now assess whether Plaintiff has carried his pleading burden.

B.      Application

Plaintiff contends that "WASA's termination of Mr. Jones could easily fit into several of the public policy exceptions carved out of the Carl doctrine." Opp. at 9 (using ECF page numbers). While his arguments are admittedly vague, there appear to be two distinct theories under which he may be invoking this exception: first, as a claim styled after Adams that he was fired because he "refused to perform acts and duties which were clearly in violation of certain laws and regulations of the District of Columbia," see Am. Compl., ¶ 41; and second, under the additional exceptions suggested by Carl's progeny – namely, that he was fired for his internal reporting of violations of various laws and regulations he had observed during his employment. See id., ¶¶ 15, 19, 26-28, 31, 36; Opp. at 4-5. At present, Plaintiff cannot prevail under either theory.

1.      Refusal to Perform Illegal Acts

To succeed under the first – that is, termination for refusal to perform illegal acts – Jones must identify the specific law he refused to violate. See Thigpen v. Greenpeace, Inc., 657 A.2d 770, 772 (D.C. 1995) ("the exception requires an outright refusal to violate a specific law, with the employer putting the employee to the choice of breaking the law or losing his job"). The allegations in Plaintiff's Amended Complaint clearly do not suffice, as he never actually cites any constitutional provision, statute, or regulation he was instructed to contravene. See, e.g., Am. Compl., ¶¶ 41-42 ("WASA allegedly terminated Plaintiff Derek Jones for being insubordinate because he refused to perform acts and duties which were clearly in violation of certain laws and regulations of the District of Columbia. By this act of termination, Defendant WASA has violated the public policy of the District of Columbia that individuals shall not be discharged from their employment because they refuse to perform acts that are illegal under the

laws and regulations of the District of Columbia.").  To survive a motion to dismiss, Jones must

provide greater specificity than a generic citation to "laws and regulations."  If he intends to

pursue his wrongful-termination claim under this theory, he must amend his complaint to

identify the <u>specific statute or municipal regulation</u> that he was instructed to violate.

2.       *Retaliation for Internal Reporting*

If Jones, instead, intends to proceed under a concept of retaliation for complaining about

WASA's violations of the law, he must nonetheless identify "a clear mandate of public policy."

<u>Carl</u>, 702 A.2d at 164; <u>see also</u> <u>Martin v. Am. Univ.</u>, No. 98-7174, 1999 WL 1125168, at *2

(D.C. Cir. 1999) ("[I]t is not clear that the code provisions [namely, the District's codes that

regulate nurses] on which Dr. Martin relies articulate the type of public policy necessary to

trigger the public policy exception") (citation omitted); <u>Lurie v. Mid-Atl. Permanente Med. Grp.,</u>

<u>P.C.</u>, 729 F. Supp. 2d 304, 326 (D.D.C. 2010) ("Even if one accepts plaintiff's account of

himself as a whistleblower punished for his good deeds, plaintiff is unable to identify an

appropriate public policy on which to base his claim."); <u>Chisholm v. Dist. of Columbia</u>, 666 F.

Supp. 2d 96, 117 (D.D.C. 2009) ("The plaintiff does not point to any fundamental public policy

expressed in the constitution or the statutes of the District of Columbia that support her position,

but rather points to the general policy of the Courts' Comprehensive Policies . . . ."); <u>Davis v.</u>

<u>Gables Residential/H.G. Smithy</u>, 525 F. Supp. 2d 87, 102 (D.D.C. 2007) ("Plaintiff's wrongful

discharge claim is deficient, however, because it does not identify any public policy purportedly

violated by his termination.").

Additionally, the rights he seeks to protect pursuant to this public policy must not be

otherwise protected by an existing statute or regulation.  <u>See</u> <u>Kassem</u>, 513 F.3d at 254.  To the

extent that Jones asserts a cause of action that rests on a public policy already advanced by Title

VII, the DCHRA, or the District's Whistleblower Protection Act, for example, such a claim

would fail.  See Carson v. Giant Food, Inc., 187 F. Supp. 2d 462, 483 (D. Md. 2002) (rejecting

public-policy exception where remedy already exists under Title VII); Stevens, 846 F. Supp. 2d

at 126 (same as to DCHRA); Carter, 980 A.2d at 1225 (same as to DCWPA).  Jones, moreover,

cannot rely on internal personnel policies as a source of public policy, as such sources cannot

support the exception.  See Brown v. Children's Nat'l Med. Ctr., 773 F. Supp. 2d 125, 139

(D.D.C. 2011) (rejecting wrongful-termination claim where "the only policies allegedly violated

were CNMC's internal personnel policies regarding employee discipline, grievances, equal

employment opportunity, harassment, and retaliation").  The Court will give Jones an

opportunity to rectify his omission if he is able.

Although Defendant could justifiably be displeased by the repeated bites at the apple

Plaintiff is being afforded here, the Court must remain mindful that "[d]ismissal with prejudice is

the exception, not the rule, in federal practice because it operates as a rejection of the plaintiff's

claims on the merits and [ultimately] precludes further litigation of them."  Rudder v. Williams,

666 F.3d 790, 794 (D.C. Cir. 2012) (citation and internal quotations omitted; brackets in

original).  The Court, nevertheless, trusts that Plaintiff will not require further assistance with his

pleadings.

**IV.     Conclusion**

For the reasons articulated herein, the Court will issue a contemporaneous order granting

Defendant's Motion without prejudice and permitting Plaintiff to file a Second Amended

Complaint by May 20, 2013.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  May 6, 2013